UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DAVID ALLAN HOLMES,

                Plaintiff,

    v.

WASHINGTON STATE DEPARTMENT
OF CORRECTIONS,

                Defendants.

Case No. C18-5735 RBL-TLF

REPORT AND
RECOMMENDATION

Noted for August 28, 2020

This matter comes before the Court on defendants' motion for summary

judgment. Dkt. 34. Plaintiff has brought this action under 42 U.S.C. § 1983 against

defendants for alleged violations of the Eight Amendment, the Americans with

Disabilities Act (ADA), the Rehabilitation Act, and for medical malpractice. Dkt. 7. This

matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of

H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR

4(a)(4). For the reasons set forth below, the Court should GRANT in part and DENY in

part defendants' motion.

I.        FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is an inmate incarcerated at Clallam Bay Corrections Center. Dkt. 7.

Plaintiff's medical records indicate that in May of 2010 plaintiff's assisted visual acuity

was 20/25 in his right eye and 20/20 in his left eye. Dkt. 37 (Declaration of Alan

Copeland O.D.) at Ex. A. In May of 2010 Dr. Copeland diagnosed plaintiff with

1  pigmentary dispersion syndrome. *Id.* Pigmentary dispersion syndrome is "an eye

2  disease in which a person's iris pigment flakes off and settles at the bottom of the eye

3  which can lead to the clogging of the eye ducts and potentially to PDS glaucoma if

4  unmonitored." Dkt. 37 at ¶ 9.

5        In 2012 plaintiff's aided visual acuity was 20/30 in both eyes. Dkt. 37 at Ex. B. In

6  a follow up optometry exam in August of 2014, Dr. Copeland noted that plaintiff's aided

7  visual acuity had decreased to 20/200 in his right eye and 20/60 in his left eye. Dkt. 37

8  at Ex. B. During this exam Dr. Copeland diagnosed plaintiff with cataracts in both eyes.

9  *Id.* Cataracts is the clouding of the lens in the eyes which causes the patient's vision to

10  become blurred and if untreated can causes blindness. Dkt. 45 (Declaration of Jesse

11  Froehling) Ex. 1 (Deposition of Jackie Peterson) at 5: 2-25; 6: 1-6.

12        Following this August 2014 optometry exam, Dr. Copeland submitted a

13  consultation request form requesting an outside consultation and proposed cataracts

14  surgery. Dkt. 37 at Ex. G. Dr. Copeland's recommendation was approved as a Level 1

15  Medical intervention[1]. *Id.* However, on December 9, 2014, Secretary Supervisor, K.

16  Davis, noted that "Pt. does not meet criteria for cataracts surgery. Appointment has

17  been cancelled." Dk. 37 at Ex. H; Dkt. 45-4.

18        In January of 2015 Dr. Copeland noted that plaintiff was still having issues with

19  cataracts and decreasing visual acuity. Dkt. 37 at Ex. J. On February 19, 2015 an eye

20  exam reported that plaintiff's aided visual acuity was 20/200 in his right eye and 20/200

21

22

23  [1] Level 1 medical intervention is one that is considered medically necessary in all cases. Level 2 medical intervention is one that may be medically necessary in some cases but not all cases. Level 3 medical intervention is one that would be considered not medically necessary. See, Dkt. 45-2 (Deposition of Steven Hammond) at 5:22-25; 6: 1-20.

24

25

REPORT AND RECOMMENDATION - 2

in his left eye. Dkt. 45-5. After the February 19, 2015 exam, Dr. Copeland prescribed plaintiff new glasses. Dkt. 37 at Ex. J.

During a July 30, 2015 follow up exam, plaintiff's visual acuity, aided by plaintiff's newly prescribed glasses, was measured at 20/70 in his right eye and 20/70 in his left eye. Dkt. 37 at Ex. M; Dkt. 45-6. On December 23, 2015 another optometry exam measured plaintiff's aided visual acuity at 20/100 in his right eye and 20/70 in his left eye. Dkt. 37 at Ex. N; Dkt. 45-8.

On June 2, 2016, plaintiff's aided visual acuity was measured at 20/200 in his right eye and 20/200 in his left eye. Dkt. 37 at Ex. O. Following this exam, Dr. Copeland recommended that plaintiff be referred for an examination by an outside ophthalmologist and requested the ophthalmologist recommend a best course of action for ongoing care. Dkt. 37 at Ex. Q; Dkt. 45-9. Dr. Fetroe approved this recommendation as a Level 1 medically necessary intervention. Dkt. 37 at Ex. Q; Dkt. 45-9. As part of a June 16, 2016 consultation request/report from PA-C Peterson, she noted that plaintiff had "mature visually significant cataracts in both eyes" and recommended "cataracts surgery on both eyes with follow up at one day, one week & one month. Cataract surgery done on different days." Dkt. 37 at Ex. R; Dkt. 45-11.

In the report from Northwest Eye Surgeons, the medical provider reported that plaintiff complained of not being able to see objects until they are inches from his face, that he is unable to read words on the television, that the sun makes it difficult to see and that his vision had gradually decreased over the last four years. Dkt. 37 at Ex. R; Dkt. 45-12. The report also stated that plaintiff had visually significant cataracts interfering with his activities of daily living. Dkt. 37 at Ex. R; Dkt. 45-12. In August of

2016 Dr. Fetroe authorized for plaintiff to have cataracts extraction surgery on one eye, noting that plaintiff would need approval from the Care Review Committee before second cataracts surgery was considered. Dkt. 45-13. Dr. Niemeyer conducted the cataract extraction surgery for plaintiff's right eye in August of 2016. Dkt. 45-14.

In two post-operative follow up reports, plaintiff indicated that his vision was good, that plaintiff was not experiencing pain and was doing well. Dkt. 37 at Ex. S; Dkt. 45-15. However, in an optometry exam on October 6, 2016, plaintiff reported that he was beginning to experience blurry spots on his surgically repaired eye and the visual acuity on his repaired eye was measured at 20/30. Dkt. 37 at Ex. S.

On October 20, 2016 plaintiff filed a health service kite indicating that he was having trouble reading and seeing because of the discrepancy between the visual acuity of his right and left eye. Dkt. 45-16. Plaintiff also reported that the stress on his eyes caused headaches. Dkt. 45-16. On December 30, 2016 plaintiff filed another health service kite reporting that he was still having trouble reading and writing because of the cataracts in he left eye and continued to experience headaches. Dkt. 45-17.

On January 31, 2017 PA-C Peterson reported that plaintiff was complaining of eye problems again. *Id.* The report notes that plaintiff's visual acuity without glasses was 20/40 for his right eye and "blurry in front of the face" for the left eye. *Id.* Finally, PA-C Peterson determined that plaintiff did not qualify to see optometry following this exam. *Id.*

In an April 4, 2017 consultation request recommending an optometry exam, Dr. Copeland noted that plaintiff "has a lot of complaints some may be valid. Some are questionable.". Dkt. 37 at Ex. T. Dr. Fetro also submitted a consultation request for

plaintiff to receive an optometry follow up exam. Dkt. 45-19. On April 27, 2017 plaintiff reported to Dr. Copeland that reading was difficult and that the cataracts in his left eye made it difficult to function. Dkt. 37 at Ex. T; 45-20. Dr. Copeland measured plaintiff's visual acuity as 20/30 unaided in plaintiff's right eye and 20/200 aided in the left eye. Dkt. 37 at Ex. T; 45-20. Dr. Copeland also noted that plaintiff "claims 20/200 is the best he can do (20/70 before). Says he has lawyer working on getting 2nd cataracts done." Dkt. 37 at Ex. T; 45-20.

In August of 2017 plaintiff filed another health service kite reporting that his vision continued to deteriorate and that he was nearly unable to read or write. Dkt. 45-22. Plaintiff also reported that he was experiencing constant pain, but that the DOC optometrist was not properly documenting the pain plaintiff was experiencing. *Id.* In September of 2017 PA-C Peterson noted that plaintiff continued to complain of blurriness and vision difficulties. Dkt. 45-23. PA-C Peterson also noted that plaintiff's visual acuity was 20/30 in the right eye and 20/200 in his left eye. Dkt. 45-23; 45-24. PA-C Peterson stated that the Care Review Committee reviewed plaintiff's medical record and determined that an ophthalmology evaluation was a Level 1 medically necessary intervention. Dkt. 45-24.

Plaintiff was sent to Northwest Eye Surgeons for a consultation on November 16, 2017. Dkt. 45-25. In the medical history, plaintiff reported to Dr. Neimeyer that he could not read or write and had to use the computer at 200% magnification in order to read the screen. Dkt. 45-25. Plaintiff also reported that he experienced motion sickness because of the discrepancy between his two eyes. *Id.* Dr. Neimeyer also reported that plaintiff's aided visual acuity was 20/20 in his right eye and 20/60 in his left eye. *Id.* Dr.

1    Neimeyer recommended that plaintiff have cataract extraction surgery on his left eye. *Id.*

2    In December of 2017 PA-C Peterson informed plaintiff that the Care Review Committee

3    determined that the left eye cataract removal was a level 3 intervention, not medically

4    necessary. Dkt.45-28.

5           On January 25, 2018 Dr. Copeland noted that plaintiff's unaided visual acuity

6    was 20/25 in his right eye and 20/200 in his left eye. Dkt. 45-29. On November 21, 2018

7    Dr. Copeland measured plaintiff's uncorrected visual acuity at 20/25 for his right eye

8    and 20/400 for his left eye. Dkt. 37 at Ex. W. On December 4, 2018, plaintiff submitted

9    another health services kite requesting information regarding how to get treatment for

10   his eye conditions. Dkt. 35 (Declaration of William P. Aurich) Ex. A. On January 30,

11   2019 Dr. Aurich informed plaintiff that plaintiff was approved for cataract surgery on his

12   left eye. Dkt. 35 at Ex. C. On March 28, 2019 plaintiff's cataracts extraction surgery was

13   approved as a level 1 medically necessary intervention. Dkt. 35 Ex. D.

14          The parties agree that plaintiff had cataract extraction surgery on his left eye in

15   2019. Dkt. 34, Dkt. 37 at Ex. X, Dkt. 44. Dr. Copeland examined plaintiff's vision after

16   the surgery and measured plaintiff's visual acuity at 20/20 in his right eye and 20/30 in

17   his left eye. Dkt. 37 at Ex. X.

18                          II.      DISCUSSION

19          Defendants argue that the Court should grant the motion for summary judgment

20   because defendants are entitled to qualified immunity. Dkt. 34. For the reasons

21   discussed below, the Court should dismiss plaintiff's Americans with Disabilities Act and

22   Rehabilitation Act claims without prejudice. The Court should also dismiss plaintiff's

23   claims against defendants Bovenkamp, Davis and Peterson without prejudice. The

24

25

Court should dismiss plaintiff's claims against the Washington Department of Corrections with prejudice.

The Court should not dismiss plaintiff's Eight Amendment claims and should not dismiss plaintiff's state law claims.

Summary judgment is supported if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden to demonstrate the absence of a genuine dispute of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine dispute concerning a material fact is presented when there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 253 (1986). A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

When the Court considers a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Anderson*, 477 U.S. at 255. However, the Court is not allowed to weigh evidence or decide credibility. *Id*. If the moving party meets their initial burden, an adverse party may not rest upon the mere allegations or denials of the pleadings; his or her response, by affidavits or as otherwise provided in Fed. R. Civ. P. 56, must set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). The Court may not

1  disregard evidence solely based on its self-serving nature. *Nigro v. Sears, Roebuck &*

2  *Co.,* 784 F.3d 495, 497 (9th Cir. 2015).

3        In response to the motion for summary judgment, the nonmoving party is

4  required to present specific facts, and cannot rely on conclusory allegations. *Hansen v.*

5  *U.S.*, 7 F.3d 137, 138 (9th Cir. 1993). The Court must determine whether the specific

6  facts that are presented by the non-moving party, considered along with undisputed

7  context and background facts, would show that a rational or reasonable jury might

8  return a verdict in the non-moving party's favor based on that evidence. *Emeldi v.*

9  *University of Oregon*, 698 F.3d 715, 728-29 (9th Cir. 2012).

10       Government officials are entitled to qualified immunity under Section 1983 unless

11  "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of

12  their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138

13  S.Ct. 577, 589 (2018) (quoting *Reichle v. Howard*, 566 U.S. 658, 664 (2012)); *see also,*

14  *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019). A right is "clearly

15  established" when existing precedent places the "statutory or constitutional question

16  beyond debate" such that every reasonable officer would understand that the conduct

17  violated that right. *Reichle*, 566 U.S. at 664.

18       To determine whether there was clearly established law, the Court has stated,

19  "[w]hile there does not have to be a case directly on point, existing precedent must

20  place the lawfulness of the particular [action] beyond debate"; and also, "there can be

21  the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently

22  clear even though existing precedent does not address similar circumstances." *Wesby,*

23  at 590. A clearly established right exists if "controlling authority or a robust consensus of

24

25

cases of persuasive authority" have held, on facts that are close or analogous to the current case, that such a right exists. *Hines v. Youseff,* 914 F.3d 1218, 1229-30 (9th Cir. 2019).

When qualified immunity is reviewed in the context of a defense motion for summary judgment, the evidence must be considered in the light most favorable to the plaintiff with respect to the central facts. *Tolan v. Cotton,* 572 U.S. 650, 657 (2014) (per curiam). If there is a genuine issue of material fact concerning both: (1) Whether it would be clear to a reasonable officer that their conduct was unlawful under the circumstances they confronted, and (2) Whether the defendant's conduct violated a constitutional right" then summary judgment granting qualified immunity is not appropriate. *Bonivert v. City of Clarkston,* 883 F.3d 865, 871-72 (9th Cir. 2018).

A. <u>ADA and RA Claims</u>

First, defendants argue that the Court should dismiss plaintiff's claims under the Americans with Disabilities Act and the Rehabilitation Act. Dkt. 34. For the reasons set forth below, the undersigned recommends that the Court dismiss plaintiff's claims for violations of the Americans with Disabilities Act and Rehabilitation Act.

Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act are designed to ensure that qualified individual with a disability are not excluded from participation in or denied the benefits of a program, service or activity of any public entity, service or program receiving federal financial assistance on the basis of their disability. 29 U.S.C. § 794(a), 42 U.S.C. § 12132. These statutes also ensure that public entities, services and programs receiving federal financial assistance do not otherwise

discriminate against an individual with a qualified disability based on such disability. 29 U.S.C. § 794(a), 42 U.S.C. § 12132.

However, as the Court explained in *Simmons v. Navajo County, Ariz.*, "[t]he ADA prohibits discrimination because of disability, not inadequate treatment for disability." 609 F.3d 1011, 1022 (9th Cir. 2010). Accordingly, a plaintiff cannot raise a cognizable claim under either the Americans with Disabilities Act or the Rehabilitation Act, on the ground that a public entity inadequately treated plaintiff's disability. *Rodriguez v. Wu*, 564 Fed. Appx. 315, 316 (9th Cir. 2014) (noting that under *Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 884 (9th Cir. 2004) the same standard applies to the ADA and the Rehabilitation Act))

Plaintiff's complaint alleges that the Department of Corrections' purported "One Good Eye" policy discriminates against plaintiff based on his disability – visual impairment caused by cataracts. Dkt. 7. Plaintiff's complaint states that because of the alleged "One Good Eye" policy, he has received inadequate treatment on his left eye and has been denied a medically necessary surgery on his left eye. Dkt. 7 at ¶¶ 31-34, 47-51. Plaintiff's does not identify any other services or programs that plaintiff has allegedly been denied access to because of his disability.

Based on the complaint and the evidence in the record, it appears that plaintiff is attempting to raise claims under the Americans with Disabilities Act and the Rehabilitation Act for inadequate treatment of his visual impairments. Plaintiff cannot raise a cognizable claim under either the Americans with Disabilities Act or the Rehabilitation Act, for inadequate treatment of plaintiff's disability. *Rodriguez,* 564 Fed. Appx. at 316.

1    Accordingly, the Court should dismiss plaintiff's claims alleging violations of the

2    Americans with Disabilities Act and the Rehabilitation Act without prejudice.

3    B. <u>Eight Amendment Claims</u>

4    Next, defendants argue that plaintiff's Eight Amendment claims should be

5    dismissed because plaintiff cannot establish that the defendants acted with deliberate

6    indifference to plaintiff's serious medical needs. Dkt. 34. Defendant also argue that

7    plaintiff's claims should be dismissed because plaintiff "cannot, as a matter of law,

8    establish, that there is existing precedent which places the statutory or constitutional

9    question here beyond debate." *Id.* For the reasons set forth below, the undersigned

10    recommends that the Court find that genuine disputes of material fact preclude a finding

11    of qualified immunity to plaintiff's Eight Amendment claims.

12    42 U.S.C. § 1983 "affords a 'civil remedy' for deprivation of federally protected

13    rights caused by persons acting under color of state law." *Paratt v. Taylor*, 451 U.S.

14    527, 535 (1981) *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327

15    (1986). To state a claim under Section 1983, a complaint must allege: (1) the conduct

16    complained of was committed by a person acting under color of state law, and (2) the

17    conduct deprived a person of a right, privilege, or immunity secured by the Constitution

18    or laws of the United States. *Id.* Section 1983 is the appropriate avenue to remedy an

19    alleged wrong only if both of these elements are presented. *Haygood v. Younger,* 769

20    F.2d 1350, 1354 (9th Cir. 1985).

21    To state an Eight Amendment claim based on prison medical treatment the

22    plaintiff must demonstrate deliberate indifference to his serious medical needs. *Jett v.*

23    *Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). A determination of "deliberate

24

25

indifference" involves an examination of two elements: (1) the seriousness of the prisoner's medical needs, and (2) the nature of the defendant's response to those needs. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (overruled on other grounds by *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc)).

    1.  <u>Constitutional Violation</u>

        a.  <u>Serious Medical Need</u>

A "serious medical need" exists if the failure to treat a prisoner's condition would result in further significant injury or the unnecessary and wanton infliction of pain contrary to contemporary standards of decency. *Helling v. McKinney,* 509 U.S. 25, 32-35 (1993); *McGuckin*, 974 F.2d at 1059. An inmate is not required "to demonstrate that he or she experiences pain that is at the limit of human ability to bear," nor does the inmate have to show "that his or her condition will degenerate into a life-threatening one." *Brock v. Wright*, 315 F.3d 158, 163 (2nd Cir. 2003).  A serious medical need may be present where there is:

> . . . The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain . . .

*McGuckin*, 974 F.2d at 1059-60.

In *Colwell v. Bannister*, the Court held that monocular blindness is a serious medical need. 763 F.3d 1060, 1066 (9th Cir. 2014). The Court also noted that even less severe losses of vision, including cataracts, could constitute a serious medical need. *Id.* at 1066-67.

Plaintiff's medical records indicate that plaintiff suffered from cataracts in his left eye causing significantly decreased visual acuity. Dkt. 45-5 – 45-11; 45-18; 45-20; 45-23; 45-24; 45-25; 45-29. Additionally, plaintiff submitted evidence from Northwest Eye Surgeons indicating that plaintiff had visually significant cataracts interfering with his activity of daily living and recommending cataract extraction surgery for his left eye. Dkt. 45-12; 45-25. The evidence in the record indicates that plaintiff had a significant visual impairment that doctors found worthy of comment and surgical intervention.

Defendants have submitted evidence that a correctional officer observed plaintiff engaging in conduct inconsistent with plaintiff's reported limited visual acuity and associated difficulties. Dkt. 40 (Declaration of Maines). Defendants also submitted a declaration from plaintiff's employment supervisor stating that plaintiff did not ask for accommodations and that plaintiff's visual acuity did not affect plaintiff's ability to work as a shipping clerk. Dkt. 42 (Declaration of Stubbs). Finally, defendants submitted evidence indicating that Dr. Copeland was skeptical of plaintiff's sincerity when reporting his visual acuity and associated problems. Dkt. 37 at Ex. T.

For purposes of a motion for summary judgment the Court is not allowed to weigh evidence or decide credibility. *Anderson*, 477 U.S. at 255. The Court is required to believe the evidence of the non-movant and draw all justifiable inference in the non-movant's favor. *Id.* Accordingly, because the parties have submitted contradicting evidence relating the extent of plaintiff's visual acuity, genuine questions of fact remain regarding whether plaintiff had a serious medical need.

b.  <u>Deliberate Indifference</u>

A plaintiff satisfies the second requirement that defendant's response to the need was deliberately indifferent by showing "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner,* 439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted). A prison official's response to the prisoner's serious medical need is "deliberately indifferent" if the official "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). "[T]he official must both be aware of facts from which the inferences could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Existence of this subjective state of mind may be inferred "in the usual ways, including inferences from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842 (internal citations omitted).

Deliberate indifference may manifest through denial, delay or intentional interference with a prisoner's medical treatment. *Estelle*, 429 U.S. at 104-5; *see also, Broughton v. Cutter Labs.*, 622 F.2d 458, 459-60 (9th Cir. 1980), "or it may be shown by the way in which prison physicians provide medical care," *Jett*, 439 F.3d at 1096. Furthermore, a physician need not fail to treat a prisoner altogether in order to violate that prisoner's Eight Amendment rights. *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989). Even so, the indifference to a plaintiff's medical needs must be more than "[m]ere 'indifference,' 'negligence,' or 'medical malpractice.'" *Broughton*, 622 F.2d at 460 (citing *Estelle*, 429 U.S. at 105-06). A prisoner need not show his harm was

substantial, but doing so provides additional support for the prisoner's claim that the defendant was deliberately indifferent to her needs. *Jett,* 439 F.3d at 1096.

Additionally, the Ninth Circuit has held that denying an inmate medically necessary surgery solely because of an administrative policy, is deliberate indifference. *Colwell,* 763 F.3d at 1068. The Court also held that a reasonable jury could conclude that "the decision of the non-treating, non-specialist physician to repeatedly deny the recommendations for surgery [from the inmate's treating specialist] was medically unacceptable under all circumstances." *Colwell*, 763 F.3d at 1068-1069 (citing *Snow v. McDaniel*, 681 F.3d 978, 983-84.); *See also, Hamilton v. Endell,* 981 F.2d 1062, 1067 (9th Cir. 1992) ("By choosing to rely upon a medical opinion which a reasonable person would likely determine to be inferior, the prison officials took actions which may have amounted to the denial of medical treatment, and the 'unnecessary and wanton infliction of pain.'"), *overruled in part on other grounds as recognized in Snow*, 681 F.3d at 986.

Defendants cite to this Court's previous decision in *Johnson v. Morgan*, No. 16-cv-5738-BHS-TLF, 2018 WL 4084783 (W.D. Wash. June 6, 2018) for the proposition that the DOC's policy is not a "One-Good Eye" policy and therefore the policy does not demonstrate deliberate indifference. Dkt. 34 at 21-22. Defendants argue that plaintiff's complaint should be dismissed because the policy in *Johnson* is the same policy that applied to plaintiff and he therefore cannot demonstrate that defendants acted with deliberate indifference. *Id.*

In *Johnson v. Morgan*, the plaintiff suffered from significant cataracts in his right eye. No. 16-cv-5738 BHS-TLF, 2018 WL 4084783 at * 2 (W.D. Wash. June 6, 2018). Mr. Johnson had cataracts in both eyes, but his right eye was the worse. *Id.*  Mr.

1    Johnson received surgery in his right eye, which corrected the visual acuity in his right

2    eye to 20/20. *Id.* Despite having mild cataracts in his left eye, medical exams recorded

3    his visual acuity as 20/30 in his left eye. *Id.*  Mr. Johnson filed a Section 1983 action

4    alleging that the defendants violated his Eight Amendment rights by refusing cataract

5    surgery in his left eye and delaying surgery on his right eye. *Id.* at *6. Mr. Johnson

6    alleged that the DOC policy regarding cataracts amounted to an unconstitutional one

7    good eye policy. *Id.*

8         The Court noted that although monocular blindness caused by cataracts is a

9    serious medical condition, there is a distinction between severe vison loss due to

10   cataracts and minor cataracts with little impact on an inmate's vision. *Johnson*, 2018 WL

11   4084783 at *6 (citing *Colwell*, 763 F.3d at 1067). In *Johnson*, there was no medical

12   evidence in the record indicating that the Mr. Johnson's vision in his left eye was

13   significantly impaired. 2018 WL 4084783 at *6. Accordingly, the Court recommended

14   that plaintiff's claims be dismissed on summary judgment, because the cataracts in

15   plaintiff's eye was not severe enough to qualify as a serious medical need. *Id.*

16        The Court went on to distinguish Mr. Johnson's circumstances from the situation

17   before the Court in *Colwell v. Bannister*. *Id.* First, the Court noted that although the

18   Department of Corrections policy indicated that the worst eye would qualify for cataract

19   surgery, there was a threshold for deterioration of the worse eye that would prevent

20   monocular blindness. *Id.* at * 7. The Court noted that unlike the case by case policy in

21   place in *Colwell v. Bannister*, the Department of Correction's policy set clear guidelines

22   for when inmates qualified for cataracts surgery. *Id.* Accordingly, because Mr. Johnson

23   would be provided cataracts surgery if his left eye visual acuity deteriorated beyond

24

25

20/60-3, the policy in question did not demonstrate deliberate indifference. *Id.* The Court

adopted the Report and Recommendation and dismissed Mr. Johnson's medical care

claims as a matter of law. *Johnson v. Morgan*, No. 16-5738 BHS-TLF, 2018 WL

4073252 (W.D. Wash. August 27, 2018).

Unlike Mr. Johnson, Mr. Holmes has submitted medical records indicating that

the visual acuity in his left eye is significantly impaired. In fact, in separate exams,

plaintiff's treatment provider noted that plaintiff had visually significant cataracts in his

left eye. Dkt. 45-11, 45-12, 45-25. Additionally, plaintiff's medical records show that

plaintiff's aided visual acuity in his left eye was: 20/60 in 2014 (Dkt. 37 Ex. B), 20/200 in

February of 2015 (Dkt. 45-5), 20/70 in July of 2015 (Dkt. 45-6), 20/70 in December of

2015 (Dkt. 45-8), 20/200 in June of 2016 (Dkt. 37 at Ex. O), 20/200 in April of 2017 (Dkt.

45-20), 20/200 in September of 2017 (Dkt. 45-23), 20/60 in November of 2017 (Dkt. 45-

25). Further, plaintiff reported that he was having trouble, reading, writing, seeing and

functioning because of the discrepancy in visual acuity between his left and right eye.

Dkt. 45-16, 45-17, Dkt. 45-18, 45-20, 45-22, 45-23, 45-25.

Moreover, in *Johnson*, the Court held that the Department of Correction's policy

did not demonstrate deliberate indifference because it set clear medical criteria for an

inmate to qualify for surgery --that the corrected visual acuity in the affected eye was

worse than 20/60-3. This same visual acuity threshold was in effect during the relevant

period of this litigation. Dkt. 34 at 21, Dkt. 45-3.

But, in 2014 despite having an aided visual acuity of 20/200 in his right eye and

20/60 in his left eye, plaintiff was denied cataract surgery on either eye because "Pt.

does not meet criteria for cataract surgery." Dkt. 37 Ex. B. Although plaintiff would

1    eventually be provided surgery on his right eye two years later, this 2014 denial

2    indicates that under the DOC policy, plaintiff was denied medical treatment despite his

3    visual acuity being worse than the visual acuity threshold qualifying an inmate for

4    cataract surgery set forth in the policy.

5        Additionally, on July 30, 2015 despite plaintiff's corrected visual acuity being

6    20/70 in both eyes, thus both qualifying for surgery under the DOC guidelines,

7    defendants recommended that plaintiff be re-tested in four months to see if his visual

8    acuity changed. Dkt. 45-6. When plaintiff was reexamined in December of 2015, his

9    corrected visual acuity was 20/100 in his right eye and 20/70-2 in his left eye, plaintiff

10   was not recommended for surgery. Dkt. 45-8.

11       In August of 2016, plaintiff was referred to an outside ophthalmologist for

12   evaluation and to recommend a best course of action for ongoing care. Dkt. 45-9. Dr.

13   Niemeyer recommended cataract extraction surgery on both eyes. Dkt. 45-11, 45-12.

14   Plaintiff was approved for cataract extraction in one eye and informed that he would

15   need approval from CRC before surgery on the second eye could be considered. Dkt.

16   45-13. The medical records do not explain why plaintiff was approved for surgery on

17   one eye only when visual acuity in both eyes was worse than 20/60.

18        In January of 2017 plaintiff's visual acuity was 20/40 in his right eye. Dkt. 45-18.

19   Plaintiff's left eye visual acuity was recorded as "blurry in front of the face". *Id.* Plaintiff

20   was informed that he "does not qualify to see optometry at this time." *Id.*

21       Additionally, in November of 2017, Dr. Neimeyer measured plaintiff's visual

22   acuity as 20/60 in his left eye. Dkt. 45-25. However, Dr. Neimeyer also noted that

23   plaintiff had visually significant cataracts in his left eye that interfered with his activities

24

25

REPORT AND RECOMMENDATION - 18

of daily living and recommended cataracts extraction surgery. *Id.* In December of 2017 the Care Review Committee determined that the recommended cataract extraction surgery was a level 3 medical intervention and denied the surgery. Dkt. 45-28.

Defendants argue that the Department of Correction's policy does not demonstrate that the defendants were deliberately indifferent to plaintiff's medical condition because, as this Court held in *Johnson*, the policy set a clear threshold for when cataract surgery is necessary. Dkt. 34 at 21-22.

Starting in July of 2015, plaintiff's left eye visual acuity met the threshold qualifying an inmate for cataract surgery. Plaintiff was not referred for cataract surgery on his left eye until 2019. Additionally, despite visual acuity exams indicating that plaintiff's left eye visual acuity was deteriorating, defendants informed plaintiff that he did not qualify to see optometry and informed him that surgery on his left eye was not a medically necessary medical intervention.

Plaintiff's medical records do not explain why plaintiff was denied surgery despite meeting the threshold visual acuity for cataract surgery per the DOC policy. However, in the Deposition of Jacki Peterson, PA-C Peterson explains that plaintiff's cataract surgery was denied because he did not meet the Offender Health Plan protocol. Dkt. 45-1 at ¶¶ 18-22. PA-C Peterson further explained that under the Offender Health Plan protocol, if an inmate's vision is 20/60 or better in one eye, the inmate will not warrant an eye exam. Dkt. 45-1 at ¶¶ 7-11. Accordingly, it appears from the Deposition of Peterson, that PA-C Peterson is suggesting that plaintiff was denied surgery on his left eye under the policy because his right eye had a visual acuity greater than 20/60-3.

Based on the foregoing, there are questions of fact regarding why plaintiff was denied surgery on his left eye for years, despite treating experts' consistent recommendations for surgery. Considering the evidence in the record, a reasonable jury could conclude that the defendants ignored the recommendations of treating specialist and made the decision to deny plaintiff medical treatment based on the Department of Correction's administrative policy. In *Colwell v. Bannister*, the Court held that monocular blindness is a serious medical need, and in this case there are material issues of fact concerning deliberate indifference. 763 F.3d 1060, 1066 (9th Cir. 2014).

Therefore, the Court should find that a genuine issue of fact exists regarding whether the defendants were deliberately indifferent to plaintiff's serious medical conditions.

2.  Clearly Established Law

The Court should find that it is clearly established law that disregarding a treating expert's recommendation for treating a serious medical condition based solely on administrative policy may constitute deliberate indifference.

In 1992 the Ninth Circuit held that prison officials ignoring or disregarding the recommendation of a treating specialist for reasons unrelated to the medical needs of the prisoner may amount to the denial of medical treatment and the unnecessary and wanton infliction of pain. *Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992). Further, in 2014, the Ninth Circuit held that a reasonable jury could conclude that "the decision of the non-treating, non-specialist physicians to repeatedly deny the recommendation for surgery was medically unacceptable under all circumstances." *Colwell*, 763 F.3d at 1068. The Ninth Circuit also held that prison officials denying an

1   inmate medically necessary cataracts extraction surgery based solely on administrative

2   policy amounted to deliberate indifference. *Id.*

3   The medical evidence indicates that plaintiff first met the threshold for cataract

4   surgery in 2015 but was denied surgery until 2019. The Ninth Circuit had already

5   decided *Hamilton* and *Colwell* during the relevant period of this litigation. Therefore,

6   clearly established law existed – existing precedent places the "statutory or

7   constitutional question beyond debate" such that every reasonable officer would

8   understand that the conduct violated that right. *Reichle*, 566 U.S. at 664.

9   Therefore, the Court should find that genuine disputes of material facts present in

10  this case preclude a finding of qualified immunity with regards to plaintiff's Eighth

11  Amendment claims.

12  C.  Defendant Bovenkamp

13  Next, defendants argue that plaintiff's claims against defendant Bovenkamp

14  should be dismissed because the only substantive allegation against defendant

15  Bovenkamp is that he denied plaintiff's final level III appeal of his grievance. Dkt. 34. For

16  the reasons set forth herein, the undersigned recommends that the Court dismiss

17  plaintiff's claims against defendant Bovenkamp.

18  The complaint alleges that after the defendants denied plaintiff's cataract

19  surgery, he filed a grievance challenging this decision. Dkt. 7 at ¶ 49. Plaintiff alleges

20  that the grievance was denied. Dkt. 7 at ¶ 50. Plaintiff contends that he appealed the

21  denial of the grievance and defendant Bovenkamp rejected the appeal. Dkt. 7 at ¶ 50.

22  The only factual allegation made against defendant Bovenkamp is that defendant

23  Bovenkamp rejected plaintiff's appeal of the denial of plaintiff's grievance. However, the

24

25

denial of a grievance does not establish personal participation if it lacks connection to

the alleged violation of a constitutional right. *See, Gallagher v. Shelton*, 587 F.3d 1063,

1069 (10th Cir. 2009) ("rubber-stamp[ing]" of grievances does not show personal

participation). Therefore, plaintiff's complaint does not raise a cognizable Section 1983

claim against defendant Bovenkamp.

Accordingly, the Court should dismiss, without prejudice, plaintiff's claims against

defendant Bovenkamp.

D. <u>Defendant Davis and Washington State Department of Corrections</u>

Defendants also argue that the Court should dismiss plaintiff's claims against

defendant Davis because plaintiff's allegations against defendant Davis are based on

defendant Davis' purely administrative conduct. For different reasons, discussed below,

the Court should dismiss plaintiff's claims against defendant Davis and Washington

State Department of Corrections.

Pursuant to 28 U.S.C. 1915A, the Court must dismiss the complaint of a prisoner

proceeding *in forma pauperis* "at any time if the [C]ourt determines" that the action: (a)

"is frivolous or malicious", (b) "fails to state a claim on which relief may be granted" or

(c) "seeks monetary relief against a defendant who is immune from such relief." 28

U.S.C. § 1915A(a), (b).

Plaintiff's complaint raises claims against defendant Davis only in her official

capacity. Dkt. 7 at ¶ 14. When a plaintiff sues a state official in their official capacity, the

action should be treated as a suit against the State and not the named official.

*Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013).

Because the action is treated as a suit against the State, the state officer sued for

1   damages in their official capacity, like the State, is not a "person" within the meaning of

2   Section 1983. *Paeste v. Gov't of Guam*, 798 F.3d 1228, 1236 (9th Cir. 2015).

3   Accordingly, a plaintiff cannot seek damages in a Section 1983 action against a state

4   official in their official capacity. *Id.*

5        Plaintiff's complaint seeks injunctive relief ordering the defendants provide

6   plaintiff necessary cataract surgery and other necessary treatment. Dkt. 7. Plaintiff's

7   complaint also seeks compensatory and punitive damages as well as reasonable

8   attorney fees. Dkt. 7. However, both parties agree that plaintiff has now received the

9   necessary cataracts extraction surgery on both eyes. Dkt. 34 at 11, 16, Dkt. 44 at 6, 10.

10  Accordingly, because defendants have provided plaintiff the requested surgical

11  procedure, plaintiff's request for injunctive relief is now moot. Therefore, plaintiff's

12  remaining claims for relief are for monetary damages.

13       Plaintiff cannot seek monetary damages against defendant Davis in her official

14  capacity under Section 1983. Accordingly, the undersigned recommends that the Court

15  dismiss plaintiff's claims against defendant Davis without prejudice.

16       Similarly, a state agency does not constitute a "person" under Section 1983. *Will

17  v. Michigan,* 491 U.S. 58, 64 (1989). Accordingly, plaintiff cannot raise a Section 1983

18  action against the Washington State Department of Corrections. Further, the

19  Washington State Department of Corrections is immune from plaintiff's cause of action

20  pursuant to the Eleventh Amendment of the United States Constitution. *Hafer v. Melo,*

21  502 U.S. 21, 30 (1991); *Edelman v. Jordan,* 415 U.S. 651, 662-63 (1974). Accordingly,

22  plaintiff's claims for damages should be dismissed with prejudice against the

23  Washington State Department of Corrections.

24

25

1

E.  Defendant Peterson

2      Defendants also argue that the Court should dismiss plaintiff's claims against

3  defendant Peterson. Dkt. 34. Defendants argue that the Court should dismiss these

4  claims because plaintiff's complaint fails to make any substantive allegations against

5  defendant Peterson. *Id.* The undersigned recommends that the Court dismiss plaintiff's

6  claims against defendant Peterson without prejudice.

7      Plaintiff's factual allegations are insufficient to raise a Section 1983 claim against

8  defendant Peterson because the complaint does not allege that defendant Peterson's

9  conduct deprived plaintiff of a right, privilege or immunity secured by the Constitution or

10 laws of the United States. Plaintiff alleges that defendant Peterson informed him of the

11 Care Review Committee's decision to deny a purportedly necessary medical procedure.

12 However, the complaint does not allege that defendant Peterson was a member of the

13 Care Review Committee or otherwise played a role in the decision to deny plaintiff the

14 requested medical procedure. Accordingly, plaintiff's complaint fails to allege that

15 defendant Peterson's conduct deprived plaintiff of a right, privilege or immunity secured

16 by the Constitution or laws of the United States.

17     For the reasons set forth above, the Court should dismiss plaintiff's claims

18 against defendant Peterson without prejudice.

19 F.  State Medical Negligence Claims

20     In the motion for summary judgment the defendants request that the Court

21 dismiss plaintiff's state law claims against defendants Fetroe and Copeland. Dkt. 34.

22 However, defendants do not provide any evidence or argument regarding these claims.

23 Defendants only mention these claims in their conclusion stating that the Court should

24

25

REPORT AND RECOMMENDATION - 24

1   "dismiss Mr. Holmes's lawsuit with prejudice, including Mr. Holmes' state law claim

2   against Defendants Fetroe and Copeland for medical malpractice/negligence." Dkt. 34.

3          In the reply brief, defendants argue that the Court should dismiss plaintiff's

4   medical negligence claims against Dr. Fetroe and Dr. Copeland because plaintiff failed

5   to provide the Court expert testimony on the standard of care in Washington state to

6   support these claims. Dkt. 46. Defendants raise arguments regarding the standard of

7   care for plaintiff's state law claims for the first time in the defendants' reply brief.

8          For purposes of a motion for summary judgment, the moving party bears the

9   initial burden to demonstrate the absence of a genuine dispute of material fact for trial.

10  *Celotex Corp.*, 477 U.S. at 323. Here, defendants' motion does not provide any

11  argument, authority or evidence regarding plaintiff's state law claims against Dr. Fetroe

12  and Dr. Copeland. Accordingly, the Court should find that defendants' motion failed to

13  show that no genuine dispute of material facts exists for plaintiff's state law claims.

14         Additionally, defendants argue the issue of plaintiff's state law claims for the first

15  time in their reply brief. An argument is properly raised when it is raised sufficiently in

16  the moving party's motion for the trial court to rule on it. *Greisen v. Hanken*, 925 F.3d

17  1097, 1115 n. 6 (9th Cir. 2019) (citing *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510,

18  515 (9th Cir. 1992)). Accordingly, the Court need not consider the arguments raised for

19  the first time in the reply brief. *Greisen*, 925 F.3d at 1115. Because defendants raise the

20  issue of plaintiff's state law claims against Dr. Fetroe and Dr. Copeland for the first time

21  in their reply brief, the Court should decline to consider these arguments.

22         Based on the foregoing, the Court should deny defendants' motion regarding

23  plaintiff's state law claims against Dr. Fetroe and Dr. Copeland.

24

25

1

<u>Conclusion</u>

2      Based on the foregoing discussion, the undersigned recommends that the Court

3  **GRANT IN PART** and **DENY IN PART**, defendants' motion. The Court should dismiss

4  plaintiff's Americans with Disabilities Act and the Rehabilitation Act claims without

5  prejudice. The Court should dismiss plaintiff's claims against defendants Bovenkamp,

6  Davis and Peterson without prejudice. The Court should dismiss plaintiff's claims

7  against the Washington State Department of Corrections with prejudice. The Court

8  should not dismiss plaintiff's Eight Amendment Claims and should not dismiss plaintiff's

9  state law claims.

10      The parties have **fourteen (14) days** from service of this Report and

11  Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 6;

12  FRCP 72(b)(2). Failure to file objections will result in a waiver of those objections for

13  purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). If objections are filed, the

14  parties shall have **fourteen (14) days** from the service of the objections to file a

15  response. FRCP 72(b)(2). Accommodating this time limitation, this matter shall be set

16  for consideration on August 28, 2020, as noted in the caption.

17      Dated this 14th day of August, 2020.

18

19

20      *Theresa L. Fricke*

21      Theresa L. Fricke
       United States Magistrate Judge

22

23

24

25

REPORT AND RECOMMENDATION - 26