UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DAVID ALLAN HOLMES,<br><br>     Plaintiff,<br>  v.<br><br>WASHINGTON STATE DEPARTMENT OF CORRECTIONS, et al.,<br><br>     Defendants. | Case No. C18-5735 MJP-TLF<br><br>REPORT AND RECOMMENDATION<br><br>Noted for October 22, 2021 |

This matter is before the Court on defendants' filing of a motion for summary judgment. Dkt. 60. Plaintiff has brought suit under 42 U.S.C. § 1983 against defendants for alleged violations of his Eighth Amendment rights. Dkt. 59. This matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4). For the reasons set forth below, the Court should Grant In Part and Deny In Part defendants' motion. The Court should dismiss plaintiff's claims against Dr. Copeland and Dr. Fetroe. The Court should not dismiss plaintiff's claims against any of the remaining defendants.

    I.   FACTUAL AND PROCEDURAL HISTORY

Plaintiff is an inmate at Clallam Bay Corrections Center. Dkt. 59. Plaintiff was diagnosed with pigmentary dispersion syndrome, which can lead to clogging of the eye ducts and PDS glaucoma. Dkt. 37. From 2012 to 2016, plaintiff's visual acuity drastically

REPORT AND RECOMMENDATION - 1

1  declined due to his cataracts. Dkt. 37 at Ex. B, G, J, M, N, O, R; Dkt. 45-1. In August of
2  2016, plaintiff received a cataract removal surgery for his right eye. Dkt. 45-13.
3  Beginning in October of 2016, plaintiff began complaining of trouble with his vision and
4  headaches. Dkt. 37 at Ex. S, T; Dkt. 45-16.
5      This continued until he was sent for a consultation at Northwest Eye Surgeons in
6  November of 2017. Dkt. 37 at Ex. T; Dkt. 45-17; Dkt. 45-22; Dkt. 45-23; Dkt. 45-24; Dkt.
7  45-25. At this consultation, Dr. Niemeyer -- plaintiff's ophthalmologist -- recommended
8  that plaintiff receive cataract removal surgery in his left eye. Dkt. 45-25. PA-C Peterson
9  informed plaintiff that the Care Review Committee determined that the left eye cataract
10  removal was a level 3 intervention, not medically necessary. Dkt. 45-28.
11      In 2018 plaintiff's visual acuity in his left eye continued to deteriorate. Dkt. 37 at
12  Ex. W; Dkt. 45-29. Plaintiff received his second cataract removal surgery after it was
13  deemed medically necessary in 2019. *Id.* On January 30, 2019, Dr. Aurich informed
14  plaintiff that he was approved for cataract surgery on his left eye. Dkt. 35 at Ex. C. It is
15  undisputed that plaintiff underwent cataracts extraction surgery on his left eye in 2019.
16  Dkt. 34; Dkt. 37 at Ex. X; Dkt. 44.
17      Plaintiff filed this action pursuant to 42 U.S.C. § 1983 for alleged violations of his
18  constitutionally-protected rights. Dkt. 1. Defendants filed a motion for summary
19  judgment arguing that each individual defendant was entitled to qualified immunity from
20  plaintiff's claims. Dkt. 34. Defendants contended that plaintiff could not establish that the
21  Department of Correction's cataract surgery policy violated the United States
22  Constitution or show the existence of clearly established law such that every official in
23  each defendant's situation would have known that their actions violated plaintiff's

1  federally protected rights. Dkt. 34. The undersigned issued a Report and
2  Recommendation recommending the Court dismiss plaintiff's Americans with
3  Disabilities Act and Rehabilitation Act claims without prejudice and dismiss plaintiff's
4  claims against defendants Bovenkamp, Davis and Peterson without prejudice. Dkt. 50.
5  The Court also recommended the Court dismiss plaintiff's claims against the
6  Washington Department of Corrections with prejudice. Dkt. 50.

7  The Court recommended the Court not dismiss plaintiff's Eight Amendment
8  claims or state law claims. Dkt. 50. The Report and Recommendation explained that the
9  Court should not grant summary judgment on the issue of qualified immunity because
10 questions of fact remained regarding why plaintiff was denied surgery on his left eye for
11 years, despite treating expert's consistent recommendation for surgery. Dkt. 50. The
12 Court also explained that a reasonable jury could conclude that defendants acted with
13 deliberate indifference to plaintiff's medical needs by ignoring the recommendations of
14 treating specialists based solely on the Department of Corrections administrative policy.
15 Dkt. 50 (citing *Colwell v. Bannister*, 763 F.3d 1060, 1068 (9th Cir. 2014), *Hamilton v.
16 Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992)).

17 Defendants objected to the Court's Report and Recommendation. Dkt. 51. The
18 Court adopted the Report and Recommendation. Dkt. 53.

19 Defendants filed a motion for reconsideration. Dkt. 55. They argued the Court
20 erred by not dismissing plaintiff's lawsuit based on immunity from suit (state officials
21 sued only in their official capacities) and for failing to allege or provide evidence of direct
22 personal involvement of the defendants in the alleged violations. Dkt. 55. The Court
23 Granted in Part and Denied in Part defendants' motion. Dkt. 58. The Court dismissed

Defendants Sinclair, Haynes, Boe and Hammond because plaintiff impermissibly sued these defendants in their official capacities for monetary damages. Dkt. 58. The Court rejected defendants' argument that the Department of Corrections cataract eye surgery policy was not unconstitutional because the defendants' alleged conduct raised genuine issues of material fact about whether the defendants acted with deliberate indifference to plaintiff's serious medical needs. *Id.* Accordingly, the Court held that plaintiff's claims against Dr. Copeland and Dr. Fetroe could proceed in this litigation. *Id.*

Plaintiff filed an amended complaint alleging that Defendants Hammond, Kariko, and Bovenkamp violated plaintiff's Eighth Amendment rights based on the delay of his cataract removal surgeries. Dkt. 59. Plaintiff alleges that Dr. Hammond, Dr. Kariko, and Mr. Bovenkamp were supervisory officials who managed, promulgated, implemented, or were otherwise responsible for the Department of Corrections' cataract removal policy. *Id.* The amended complaint alleges that the policy directed Washington Department of Corrections employees to deny plaintiff necessary medical care. *Id.* Plaintiff further alleges that the defendants were aware of his medical records and thus were deliberately indifferent to the fact that the cataract removal policy was aggravating a serious medical condition. *Id.* The amended complaint does not reallege plaintiff's claims against Dr. Copeland and Dr. Fetroe. *Id.*

Defendants move for summary judgment arguing that the Court should dismiss plaintiff's amended complaint because plaintiff fails to state a Section 1983 action against each defendant and because each defendant is entitled to qualified immunity. Dkt. 60. Defendants also argue that the Court should hold that plaintiff has waived his claims against Dr. Copeland and Dr. Fetroe. Dkt. 60.

## II.  DISCUSSION

Summary judgment is supported if the materials in the record "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure (FRCP) 56 (a),(c). The moving party bears the initial burden to demonstrate the absence of a genuine dispute of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A genuine dispute concerning a material fact is presented when there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In this context, materiality means the fact is one that is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit"; thus, materiality is "determined by the substantive law governing the claim." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The non-moving party is required to show that genuine issues of material fact "'can be resolved only by a finder of fact *because they may reasonably be resolved in favor of either party.'" California Architectural Building Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson,* 477 U.S. at 250) (emphasis in original). When the Court considers a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Anderson,* at 255. Yet the Court is not allowed to perform the jury's function – the Court may not weigh evidence, draw legitimate inferences from facts, or decide credibility. *Id.* If the moving party meets their initial burden, an adverse party may not rest upon the mere allegations or denials of his pleading; his or her response, by affidavits or as otherwise provided in FRCP 56, must set forth specific

REPORT AND RECOMMENDATION - 5

1  facts showing there is a genuine issue for trial. FRCP 56(c). The Court may not
2  disregard evidence solely based on its self-serving nature. *Nigro v. Sears, Roebuck &*
3  *Co.,* 784 F.3d 495, 497 (9th Cir. 2015). "The district court can disregard a self-serving
4  declaration that states only conclusions and not facts that would be admissible
5  evidence." *Id.*

6  To state a claim under 42 U.S.C. § 1983, a complaint must allege: (a) the
7  conduct complained of was committed by a person acting under color of state law, and
8  (b) the conduct deprived a person of a right, privilege, or immunity secured by the
9  Constitution or laws of the United States. *See Parratt v. Taylor*, 451 U.S. 527, 535
10 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). Section
11 1983 is the appropriate avenue to remedy an alleged wrong only if both of these
12 elements are present. *See Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985).

13 Unless plaintiff makes a two-part showing, qualified immunity shields government
14 officials from liability. The plaintiff must show both: the official(s) violated a federal
15 statutory or constitutional right, and – at the time of the alleged act or failure to act there
16 was clearly established law that defined the contours of the federal right objectively
17 putting the official(s) on notice – i.e., every reasonable official would understand that
18 what they are doing is unlawful. *Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019);
19 *District of Columbia v. Wesby,* 138 S. Ct. 577, 589 (2018).

20 When qualified immunity is reviewed in the context of a defense motion for
21 summary judgment, the evidence must be considered in the light most favorable to the
22 plaintiff with respect to central facts. *Tolan v. Cotton,* 572 U.S. 650, 657 (2014) (per
23 curiam). If there is a genuine issue of material fact concerning both -- (1) whether it
24
25

REPORT AND RECOMMENDATION - 6

1  would be clear to a reasonable officer their conduct was unlawful under the

2  circumstances, and (2) whether the defendant's conduct violated a constitutional right --

3  then summary judgment granting qualified immunity is not appropriate. *Bonivert v. City*

4  *of Clarkston,* 883 F.3d 865, 871-72 (9th Cir. 2018).

5      To determine whether there was clearly established law, the Court has stated,

6  "[w]hile there does not have to be a case directly on point, existing precedent must

7  place the lawfulness of the particular [action] beyond debate"; and the Court has also

8  observed, "there can be the rare obvious case, where the unlawfulness of the officer's

9  conduct is sufficiently clear even though existing precedent does not address similar

10  circumstances." *Wesby,* at 590. A clearly established right exists if "controlling authority

11  or a robust consensus of cases of persuasive authority" have held, on facts that are

12  close or analogous to the current case, that such a right exists. *Hines v. Youseff,* 914

13  F.3d 1218, 1229 (9th Cir. 2019).

14      In some contexts, general constitutional rules identified in previous court

15  decisions may apply with such obvious clarity to the specific conduct of a defendant,

16  that qualified immunity will not apply even though existing case law did not hold the

17  specific action in question unlawful. *United States v. Lanier,* 520 U.S. 259, 271 (1997);

18  *Bonivert,* 883 F.3d at 872-73. If qualified immunity operated as a shield for all conduct

19  not specifically addressed in existing case law at the time of the event in question,

20  officials would never be held accountable for unprecedented constitutional violations

21  that would appear obvious. *Hope v. Pelzer,* 536 U.S. 730, 740-42 (2002) (finding that a

22  correctional officer's act of handcuffing an inmate to a hitching post in a painful position

23  under dangerous and degrading circumstances was "antithetical to human dignity" and

24

25

so obviously wanton, painful and cruel under the Eighth Amendment that the officer had fair notice that this was unlawful under existing legal precedent).

### A. Eighth Amendment Claims

To state an Eight Amendment claim based on medical treatment in prison, the plaintiff must demonstrate deliberate indifference to his serious medical needs. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). A determination of "deliberate indifference" involves an examination of two elements: (1) the seriousness of the prisoner's medical needs, and (2) the nature of the defendant's response to those needs. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (overruled on other grounds by *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc)).

#### 1. Serious Medical Need

A "serious medical need" exists if the failure to treat a prisoner's condition would result in further significant injury or the unnecessary and wanton infliction of pain contrary to contemporary standards of decency. *Helling v. McKinney,* 509 U.S. 25, 32-35 (1993); *McGuckin*, 974 F.2d at 1059. A serious medical need may be present where there is:

> . . . The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain . . .

*McGuckin*, 974 F.2d at 1059-60.

The Ninth Circuit has held that monocular blindness is a serious medical need. *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014). The Court also noted that

even less severe losses of vision, including cataracts, could constitute a serious medical need. *Id*. at 1066-67.

Defendants argue that plaintiff's claims fail because plaintiff alleges that he suffers from monocular blindness which defendant contend is not a diagnosable condition. Dkt. 60. Additionally, defendants argue that plaintiff did not suffer from any kind of blindness because a diagnosis of blindness requires a finding of permanent vision loss and plaintiff's vision was repaired. Dkt. 60.

Plaintiff alleges that he was diagnosed with Pigmentary Dispersion Syndrome which allegedly caused plaintiff to suffer from cataracts and significant vision loss. Dkt. 59 at ¶¶ 10-14, 22-27. Plaintiff's amended complaint alleges that several doctors noted his cataracts and recommended surgery. *Id*. at ¶¶ 25-29. The amended complaint also alleges that this condition ultimately required surgery on both eyes. *Id*. at ¶¶ 31-34, 51.

Additionally, plaintiff has submitted medical records indicating that he suffered from cataracts causing significantly decreased visual acuity. Dkt. 45. Plaintiff also submitted evidence from Northwest Eye Surgeons indicating that he had visually significant cataracts interfering with his activities of daily living and recommending cataract extraction surgery. Dkt. 45-12; 45-25.

Plaintiff has alleged, and presented evidence indicating, that he suffered from significant vision loss that doctors found worthy of comment and surgical intervention. The fact that defendant disagrees with the term or diagnosis that plaintiff uses to identify his condition does not make plaintiff's alleged vision loss any less of a serious medical need. Further, weighing conflicting medical records to determine the nature and extent of plaintiff's medical condition is an issue of fact that the Court cannot decide on a

REPORT AND RECOMMENDATION - 9

1  motion for summary judgment. Therefore, genuine questions of material fact remain
2  regarding plaintiff's alleged serious medical need.

3              2.   Deliberate Indifference

4       A prison official's response to the prisoner's serious medical need is "deliberately
5  indifferent" if the official "knows of and disregards an excessive risk to inmate health or
6  safety." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). "[T]he official must both be
7  aware of facts from which the inferences could be drawn that a substantial risk of
8  serious harm exists, and he must also draw the inference." *Id*. Deliberate indifference
9  may manifest through denial, delay or intentional interference with a prisoner's medical
10 treatment. *Estelle*, 429 U.S. at 104-5; *see also, Broughton v. Cutter Labs.*, 622 F.2d
11 458, 459-60 (9th Cir. 1980).

12      The Ninth Circuit has held that denying an inmate medically necessary surgery
13 solely because of an administrative policy, is deliberate indifference. *Colwell,* 763 F.3d
14 at 1068. The Court also held that a reasonable jury could conclude that "the decision of
15 the non-treating, non-specialist physician to repeatedly deny the recommendations for
16 surgery [from the inmate's treating specialist] was medically unacceptable under all
17 circumstances." *Colwell*, 763 F.3d at 1068-1069 (citing *Snow v. McDaniel*, 681 F.3d
18 978, 983-84.); *See also, Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992) ("By
19 choosing to rely upon a medical opinion which a reasonable person would likely
20 determine to be inferior, the prison officials took actions which may have amounted to
21 the denial of medical treatment, and the 'unnecessary and wanton infliction of pain.'"),
22 *overruled in part on other grounds as recognized in Snow*, 681 F.3d at 986.

1    Similar to the situation in *Colwell*, where the plaintiff was denied medically
2 recommended treatment on the basis of an administrative policy, Mr. Holmes alleges he
3 was denied treatment recommended by physicians because he did not qualify under the
4 Department of Corrections' policy. One of plaintiff's physicians sent a request for
5 ophthalmologist consultation on plaintiff's cataracts in August of 2014, which was
6 subsequently cancelled because plaintiff did not meet the requirements for cataract
7 removal. Dkt. 45-4. Two years later, plaintiff received his first cataract removal surgery
8 on his right eye. Dkt. 45-14. Plaintiff began complaining of headaches and vision
9 difficulties within months of his first surgery. Dkt. 45-16. On November 16, 2017, Dr.
10 Niemeyer, plaintiff's ophthalmologist, recommended cataract removal surgery on
11 plaintiff's left eye. Dkt. 45-25. On December 6, 2017, the Department of Corrections
12 determined that the recommended course of action was not medically necessary. Dkt.
13 45-26.
14    On January 1, 2019, the policy on cataract removal was changed to allow for
15 cataract removal surgery in *either eye* if the patient's visual acuity was worse than
16 20/60. Dkt. 61. By January 30, 2019, plaintiff's second cataract removal surgery was
17 approved. Dkt. 35, Ex. C. The surgery was then conducted within months of this policy
18 change. Dkt. 37, Ex. X.
19    Based on the evidence in the record, a reasonable jury could determine that
20 plaintiff was denied medically-recommended treatment based on administrative policy.
21 A reasonable jury could also find that this conduct amounted to deliberate indifference.
22 Therefore, the Court should find that plaintiff raises triable issues of fact on the issue of
23 deliberate indifference.

REPORT AND RECOMMENDATION - 11

### 3. Personal Participation

Under Section 1983, an inmate must show that each of the defendants was involved in violating the Constitution; liability of an official will only be found if there is individual culpable action or inaction. *Hines,* 914 F.3d at 1228. Plaintiff brings this action against the defendants in their roles as supervisory officials, rather than any of his treating physicians. Dkt. 59. Plaintiff alleges the defendants managed and implemented the cataract removal policy that caused a violation of his constitutional rights. *Id.* As explained above, a reasonable jury could conclude that the cataract removal policy caused plaintiff to be subjected to deliberate indifference of his serious medical need.

A supervisor is liable for actions of subordinates that violate constitutional rights if the supervisor "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Supervisor liability can exist even without overt personal participation in the unlawful conduct. *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989). A supervisory official can be liable for implementing a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force behind the constitutional violation. *Id.*, *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013), *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1076 (9th Cir. 2012) ("Advancing a policy that requires subordinates to commit constitutional violations is always enough for § 1983 liability … so long as the policy proximately causes the harm.").

Generally, allegations that a prison official inappropriately denied or failed to adequately respond to a grievance, without more, is insufficient to state a Section 1983 cause of action. *Evans v. Skolnik*, 637 Fed. Appx. 285, 288 (9th Cir. 2015). However,

while the denial of a grievance itself is not a constitutional violation, responding to a grievance may put a supervisory official on notice that subordinate officers were violating a right which may create liability for failure to intervene. *Id.* (citing *Maxwell v. County of San Diego*, 708 F.3d 1075, 1086 (9th Cir. 2013)).

Plaintiff's amended complaint alleges that each defendant was a supervisory official for the Department of Corrections in charge of directing health care services for inmates and creating health care policies for the Department of Corrections. Dkt. 59 at ¶¶ 2, 17, 18, 66-68, 76-79. The amended complaint also alleges that each defendant was responsible for promulgating the relevant cataract removal policy. Dkt. 59 at ¶¶ 65-68, 76-79. Dr. Kariko's declaration states that the scope of her and Dr. Hammond's responsibilities included implementing health care policies for the Department of Corrections and ensuring compliance with these policies. Declaration of Kariko, Dkt. 61 at ¶¶ 3-4.

Plaintiff has alleged, and presented evidence indicating, that the Department of Corrections ignored the recommendations of treating specialist and made the decision to deny plaintiff medical treatment based on Department of Correction's administrative policy. Dkt. 45, 59. Additionally, Dr. Copeland stated that Department of Corrections medical providers provide medical treatment in accordance with the Department of Corrections Offender Health Plan policies and protocols. Declaration of Copeland, Dkt. 62 at ¶ 6. The Ninth Circuit has held that denying an inmate medically necessary surgery solely because of administrative policy, may amount to deliberate indifference. Based on the foregoing, a reasonable jury could determine that Defendants Hammond and Kariko

1 participated in the alleged violations by implementing and enforcing a policy that
2 unlawfully required subordinates to deny medically necessary treatment.

Next, the amended complaint alleges that Defendant Bovenkamp acted in a supervisory official position. Dkt. 59 at ¶¶ 66, 76. Defendant Bovenkamp confirmed that part of his duties included reviewing, investigating, and responding to the third and final level of the Department of Correction's Grievance Program. Declaration of Bovenkamp, Dkt. 36. Additionally, in the documents submitted by Defendant Bovenkamp, he acknowledges plaintiff's treatment history, and that plaintiff was denied treatment in compliance with Department of Corrections' policy. Dkt. 36 at 13, 14. Accordingly, a reasonable jury could determine that the grievance process put Defendant Bovenkamp on notice that plaintiff was unlawfully denied medically necessary treatment and Defendant Bovenkamp failed to intervene in his supervisory role.

Based on the foregoing discussion, genuine issues of fact remain regarding the defendants' personal participating in the alleged constitutional violations. Therefore, summary judgment is inappropriate on this issue.

### 4. Department of Correction's Policy

Next, contrary to defendants' assertion, the Court's previous Report and Recommendation did not hold that the challenged Department of Correction policy was constitutional. Defendants cite to the Court's previous decision in *Johnson v. Morgan*, No. 16-5738-BHS-TLF, 2018 WL 4084783 (W.D. Wash. June 6, 2018) for the proposition that the Department of Corrections Cataract Policy was not a "One-Good-Eye" policy and therefore a Constitutionally valid policy. Dkt. 34, 60.

1  In *Johnson*, the Court recommended dismissal of Mr. Johnson's claims because
2  he suffered from a mild level of cataracts (20/20 visual acuity in his right eye and 20/30
3  visual acuity in his left eye). *Johnson*, 2018 WL 4084783 at * 4, 15-19. The Court
4  recommended granting summary judgement because the cataracts in plaintiff's eye was
5  not severe enough to qualify as a serious medical need. *Id*.
6  Additionally, the Department of Corrections provided Mr. Johnson cataracts
7  surgery when his right eye became worse than 20/60-3 visual acuity, despite his left eye
8  having a visual acuity of 20/30. *Johnson*, 2018 WL 4084783 at * 4, 5. The Court
9  explained that the Department of Corrections' policy, as applied to Mr. Johnson's specific
10 set of facts, did not demonstrate deliberate indifference because it set clear medical
11 criteria for an inmate to qualify for surgery – that the corrected visual acuity in the affected
12 eye was worse than 20/60-3. *Johnson*, 2018 WL 4084783 at *18-19.
13 The fact that the Department of Corrections Cataract Policy, as applied to Mr.
14 Johnson's non-serious medical need, did not violate Mr. Johnson's rights does not mean
15 that the policy as written was constitutional in all situations. Further, plaintiff has
16 presented evidence that one of his eyes met the visual acuity threshold required to
17 necessitate surgery under the Cataracts Policy, but was denied the surgery. Dkt. 37, 45,
18 50. Plaintiff's medical records also indicate that the Department of Corrections informed
19 plaintiff that he did not qualify for treatment because under the Department's policy
20 inmates with a visual acuity of 20/60 in on eye do not qualify for an eye exam. Dkt. 45.
21 Based on the foregoing, questions of fact remain regarding whether plaintiff was
22 denied medical care – despite treating expert's recommendation for surgery – based on
23 the Department of Corrections policy that each defendant allegedly promulgated and
24
25

enforced. Considering the evidence in the record, a reasonable jury could determine that the policy as written and promulgated by defendants, required subordinates to deny plaintiff necessary medical care based solely on the policy. If a jury determined that the defendants promulgated and enforced a policy that required subordinates to violate plaintiff's constitutional rights, this would be sufficient to establish supervisory liability.

B. Qualified Immunity

As previously explained, a reasonable jury could find that defendants violated plaintiff's Eighth Amendment right.

It is clearly established law that disregarding a treating expert's recommendation for treating a serious medical condition based solely on administrative policy may constitute deliberate indifference. *Hamilton* 981 F.2d at 1067 (disregarding the recommendation of a treating specialist for reasons unrelated to medical needs of a prisoner may constitute unnecessary and wanton infliction of pain); *Colwell,* 763 F.3d at 1068 (the denial of medically necessary cataract extraction surgery due to an administrative policy constitutes deliberate indifference to a serious medical need). These decisions were issued prior to the denials of plaintiff's surgery. Thus, existing precedent placed this "constitutional question beyond debate," and there was clearly established law at the times relevant in this case. *Reichle v. Howard*, 566 U.S. 658, 664 (2012).

Additionally, the Ninth Circuit has long held that a supervisory official can be held liable under 42 U.S.C. § 1983 for advancing a policy requiring subordinates to commit constitutional violations. *Hansen*, 885 F.2d at 645-46; *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1989); *Crowley*, 734 F.3d at 977. The Ninth Circuit has

1  also held that a supervisory official may be held liable for a Section 1983 action when
2  they knowingly failed to intervene or stop constitutional violations. *Taylor*, 880 F.2d at
3  1045, *Maxwell*, 708 F.3d at 1086.
4      The Court should find that genuine disputes of material facts present in this case
5  preclude a finding of qualified immunity.
6      C. <u>Dr. Copeland and Dr. Fetroe</u>
7      The Court should dismiss Dr. Copeland and Dr. Fetroe from this litigation.
8      Amended complaints supersede previously filed complaints, rendering the
9  substance of previous complaints non-existent. *Barnes v. Sea Haw. Rafting, LLC*, 889
10 F.3d 517, 531 (9th Cir. 2018). Accordingly, any cause of action in a previous complaint
11 that is not realleged in a subsequent amended complaint is deemed waived. *Forsyth v.*
12 *Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) overruled in part on other grounds,
13 *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012).
14     Plaintiff's previous complaint alleged a cause of action against Dr. Copeland and
15 Dr. Fetroe. Dkt. 7. Plaintiff's amended complaint does not identify Dr. Copeland or Dr.
16 Fetroe as named defendants in this action and does not reallege a cause of action
17 against Dr. Copeland or Dr. Fetroe. Dkt. 59. Accordingly, plaintiff's amended complaint
18 should be deemed to waive plaintiff's claims against Dr. Copeland and Dr. Fetroe.
19 Therefore, the Court should dismiss Dr. Copeland and Dr. Fetroe from this litigation.

## CONCLUSION

21     Based on the foregoing discussion, the undersigned recommends the Court
22 Grant In Part and Deny In Part defendants' motion. The Court should dismiss plaintiff's
23 claims against Dr. Copeland and Dr. Fetroe without prejudice. The Court should not
24 dismiss plaintiff's claims against any of the remaining defendants.
25

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 6; FRCP 72(b). Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). If objections are filed, the parties shall have **fourteen (14) days** from the service of the objections to file a response. FRCP 72(b)(2). Accommodating this time limitation, this matter shall be set for consideration on **October 22, 2021**, as noted in the caption.

Dated this 7th day of October, 2021.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 18