UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DAVID ALLAN HOLMES,

Plaintiff,

v.

WASHINGTON STATE DEPARTMENT OF CORRECTIONS, et al.,

Defendant.

CASE NO. C18-5735 MJP-TLF

ORDER ADOPTING REPORT AND RECOMMENDATION

This matter is before the Court on the Report and Recommendation of the Honorable Theresa L. Fricke, United States Magistrate Judge, (Dkt. No. 71); Defendants' objections, (Dkt. No. 72); and Plaintiff's response, (Dkt. No. 73). Having considered the issues presented and the relevant record, the Court ORDERS:

1. the Report and Recommendation is ADOPTED;

2. Defendants' motion for summary judgment is GRANTED IN PART AND DENIED IN PART; and

3. Plaintiff's claims against Dr. Copeland and Dr. Fetroe are DISMISSED without prejudice.

| | |
|---|---|
| 1 | **Background** |

2  Plaintiff is an inmate at Clallam Bay Corrections Center, operated by the Washington State Department of Corrections (DOC). He filed this action under 42 U.S.C. § 1983 for violations of his rights under the Eighth Amendment to the U.S. Constitution. (Dkt. No. 59, "Amended Complaint," ¶¶ 1, 52–79.) Defendants, who are being sued in their individual capacities, are Dr. G. Steven Hammond, the former DOC Chief Medical Officer; Dr. Sara Smith Kariko, the current DOC Chief Medical Officer; and Kevin Bovenkamp, assistant secretary of the DOC Health Services Division. (Id. ¶ 2.) The central allegation is that Defendants denied him cataract surgery, forcing him to endure monocular blindness, because of policy and without medical basis. The Report and Recommendation provides the background necessary to consider Defendants' motion for summary judgment and the Court need not repeat it here. (See Dkt. No. 71 at 1–4.)

Defendants ask the Court to dismiss the Amended Complaint for failure to state a claim, under Rule 12(b)(6), and because they are entitled to qualified immunity, under Rule 12(b)(1). (Dkt. No. 60.) The Magistrate Judge recommended that the Court deny this portion of Defendants' motion. Defendants filed objections, (Dkt. No. 72), to which Plaintiff responded, (Dkt. No. 73). Defendants also asked the Court to hold that Plaintiff waived his claims against Dr. Alan Copeland and Dr. Dale Fetroe because he did not name them in the Amended Complaint. The Magistrate Judge recommended that the Court grant this portion of Defendants' motion and dismiss Plaintiff's claims against these two defendants without prejudice. There are no objections to this recommendation. For the reasons discussed below, the Court adopts the Magistrate Judge's Report and Recommendation in full.

**Discussion**

**I.      Failure to State a Claim**

To state a claim under the Eighth Amendment for inadequate medical care in prison, Plaintiff must allege that a prison official, or other person acting under color of state law, was deliberately indifferent to his serious medical needs. Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014).

**A.      Serious Medical Need**

Plaintiff alleges he suffered from monocular blindness as a result of Defendants' delay in authorizing cataract surgery on both of his eyes because of DOC policy. (Amen. Compl. ¶¶ 8, 52–79.) The Ninth Circuit has recognized monocular blindness as a serious medical need. Colwell, 763 at 1066. Defendants raise several objections relevant to whether Plaintiff has stated sufficient facts to establish this element of his claim. On summary judgment, Defendants must show there is an absence of evidence in the record to support this element. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If they do, Plaintiff must set out specific facts showing there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

*1.      Objections (D, K) regarding facts about monocular blindness.*

Defendants argue Plaintiff cannot prove he has a serious medical need because he has regained 20/20 vision after having cataract surgery on both eyes, and monocular blindness must be complete and irreversible. (Dkt. No. 72 at 7, 10.) Defendants cite Colwell in support, but the Ninth Circuit never defined monocular blindness as permanent or held that it must be irreversible to be a serious medical need. Colwell, 763 F.3d at 1063 ("We hold today, as numerous other courts considering the question have, that blindness in one eye caused by a cataract is a serious medical condition."). The facts of that decision also contradict Defendants' position. See id. at

1084 (Bybee, J., dissenting) ("It is undisputed . . . that the cataract has not—and will not—cause irreversible damage. His monocular vision can be corrected by surgery in the future . . . ."). Defendants also cite an unreported decision from the Sixth Circuit, which does not bind the Court. See Cobbs v. Pramstaller, 475 Fed. App'x 575 (6th Cir. 2012). Like Colwell, that decision cuts against Defendants because the Sixth Circuit found a serious medical need even though the plaintiff later received cataract-removal surgery and recovered his eyesight. Id. at 580. Defendants have failed to show any legal error here.

        2.        *Objections (F, H) regarding facts about visual acuity.*

Defendants argue the Magistrate Judge erred in recommending the Court adopt as a fact the statement: "From 2012 to 2016, Plaintiff's visual acuity drastically declined due to his cataracts" because Plaintiff arrived at the Corrections Center with poor uncorrected vision. (Dkt. No. 72 at 8 (quoting Dkt. No. 71 at 1–2).) Defendants have not shown error for two reasons.

First, the evidence Defendants cite is not inconsistent with this statement. Just because Plaintiff arrived at the Corrections Center with poor vision does not mean his vision could not have declined due to his cataracts. Reading the facts in the light most favorable to Plaintiff, as the Court must, the Magistrate Judge did not err because there is ample support in the record for this statement. See Tolan v. Cotton, 572 U.S. 650, 657 (2014) (per curiam).

Plaintiffs cite the following account by Dr. Alan Copeland, an optometrist at DOC who evaluated Plaintiff on multiple occasions:

> Mr. Holmes' medical records indicate that he arrived at CBCC with extremely poor eyesight. His unaided visual acuity at the time of intake was worse than 20/400 in his right eye and worse than 20/400 in his left eye. Mr. Holmes' best corrected visual acuity at intake was 20/25 in his right eye and 20/20 in his left eye. Mr. Holmes's poor vision required him to wear corrective eyeglasses at all times.

(Dkt. No. 62, Declaration of Alan Copeland, ¶ 8.) However, Dr. Copeland also said the following:

> On August 21, 2014, Mr. Holmes met with me for an evaluation. Upon examining Mr. Holmes, I found the following [sic] that Mr. Holmes' visual acuity had decreased significantly in his right eye to 20/200 and decreased to 20/60 in his left eye and that Mr. Holmes had cataracts in both eyes.

(Id. ¶ 16; see also id. at 35 (Attach. G) ("Pt has exponentially developed cataracts, OU").) His treatment plan was for Plaintiff to have his cataracts removed. (Id.) Plaintiff's medical records also show his vision further declined from 2015–16, before he had his first surgery. In 2016, Dr. Copeland reported:

> This patient's best corrected visual acuities have declined from 20/50 OD and 20/40 OS one year ago to 20/60 OD and 20/70, OS today. He has a myriad of ocular health issues: cataracts, OU, corneal dystrophy, OU and pigmentary dispersion syndrome, OY as well as high myopia and astigmatism. <u>I believe his cataracts and corneal issues have worsened</u> to the point that he cannot be corrected refractively to better than 20/60.

(Froehling Decl. Ex. 9 (emphasis added).) So it is undisputed that Plaintiff's vision declined since he entered the Corrections Center, that he was diagnosed with cataracts in both eyes by 2014, and that his vision further declined after that diagnosis due at least in part to his cataracts. In addition, the fact that Plaintiff has unaided visual acuity of 20/20 in both eyes—after two cataract surgeries—further supports the conclusion that his vision declined because of his cataracts. (See Copeland Decl. at 75 (Attach. X).) Defendants have not cited to any facts that would compel a contrary conclusion.

Second, Defendants have not shown how the above statement resulted in legal error. Even if they are correct—that there was a different cause of his decline in visual acuity—then Plaintiff has simply shown a question of fact by introducing evidence supporting the conclusion that the decline was caused by his cataracts. In that case, denying summary judgment is also the correct result.

Relatedly, Defendants argue the following statement was in error: "In 2018 Plaintiff's visual acuity in his left eye continued to deteriorate." (Dkt. No. 71 at 2.) Defendants interpret

ORDER ADOPTING REPORT AND RECOMMENDATION - 5

this statement as concluding that this decline was caused by Plaintiff's cataract. But they are reading into the statement a conclusion that is not there, and they have not cited any evidence that contradicts the statement as written, so they have not shown any legal error.

      3.    *Objection (G) regarding what caused Plaintiff to complain about vision.*

Defendants' objection about what caused Plaintiff to complain about his vision in 2016 is based on a misinterpretation of the Report and Recommendation. The relevant section states:

> In August of 2016, plaintiff received a cataract removal surgery for his right eye. (Dkt. 45-13.) Beginning in October of 2016, plaintiff began complaining of trouble with his vision and headaches. (Dkt. 37 at Ex. S, T; Dkt. 45–16.)

(Dkt. No. 71 at 2.) Defendants argue there are other reasons why Plaintiff experienced difficulty with vision and headaches, such as not wearing his glasses with a lens to correct the vision in his left eye. (Dkt. No. 72 at 8.) But the Report and Recommendation does not state, as Defendants claim, that "Mr. Holmes' right eye cataract surgery in August 2016 caused his complaints, beginning in October 2016." Defendants are rewriting the text. They have shown no legal error here.

      4.    *Objection (J) regarding effect of cataract on Plaintiff's activities of daily living.*

Defendants also object to the following portion of the Report and Recommendation:

> Additionally, Plaintiff has submitted medical records indicating that he suffered from cataracts causing significantly decreased visual acuity. (Dkt. 45.) Plaintiff also submitted evidence from Northwest Eye Surgeons indicating that he had visually significant cataracts interfering with his activities of daily living and recommending cataract extraction surgery. (Dkt. 45–12; 45–25.)

(Dkt. No. 71 at 9.) Defendants misinterpret the Magistrate Judge as "recommending to the Court that it determine Mr. Holmes' activities of daily living [were] affected by his left eye cataract." (Dkt. No. 72 at 10.) That is not what the Report and Recommendation says. It says Plaintiff

provided evidence in support of this contention. That Defendants have introduced contrary evidence only supports the Magistrate Judge's recommendation to deny summary judgment.

        5.     *Objection (L) regarding pigmentary dispersion syndrome's effect on cataracts.*

Finally, Defendants take issue with this statement:

> Plaintiff alleges that he was diagnosed with Pigmentary Dispersion Syndrome which allegedly caused plaintiff to suffer from cataracts and significant vision loss. (Dkt. 59 at ¶¶ 10–14, 22–27.)

(Dkt. No. 71 at 9.) Defendants read into this statement the conclusion that Mr. Holmes' pigmentary dispersion syndrome caused his cataracts. Again, Defendants misinterpret. Their objection is premised on erasing the words "alleges" and "allegedly."

## C.    Supervisor Liability

"A supervisor is liable under § 1983 for a subordinate's constitutional violations 'if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.' " Maxwell v. Cty. of San Diego, 708 F.3d 1075, 1086 (9th Cir. 2013) (quoting Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.1989)). Plaintiff alleges Defendants Kevin Bovenkamp, Dr. Sara Smith Kariko, and Dr. G. Steven Hammond were supervisory officials in charge of directing health care services for inmates and creating health care policies for DOC. (Dkt. No. 71 at 13.) Defendants object to the conclusion that Plaintiff has stated a claim against all three Defendants.

Defendants argue that Defendants Bovenkamp cannot be liable because he performed only administrative duties, not a medical function. (Dkt. No. 72 at 5–6.) Defendants cite Evans v. Skolnik, but that decision does not support their position. Rather, in Evans, the Ninth Circuit explained that a prisoner's grievance may put a supervisory official on notice of a constitutional violation, which may trigger a duty to intervene. Evans v. Skolnik, 637 F. App'x 285, 288 (9th

1  Cir. 2015) (citing Maxwell, 708 F.3d at 1086).  Defendant Bovenkamp states that he was

2  responsible for reviewing grievances and in fact denied a grievance by Plaintiff seeking

3  immediate cataract surgery in 2017.  (Dkt. No. 36, Declaration of Kevin Bovenkamp, ¶¶ 3–4.)

4  He also acknowledges that he reviewed Plaintiff's treatment history and upheld the denial of the

5  grievance as consistent with DOC policy.  (Id. at 13.)  There is no error in the Magistrate Judge's

6  recommendation that a reasonable jury could conclude from the record that reviewing and

7  denying Plaintiff's grievance could have put Defendant Bovenkamp on notice of a constitutional

8  violation, triggering a supervisory duty to intervene.

9  Dr. Kariko was appointed DOC Chief Medical Officer in 2018.  (Dkt. No. 61,

10  Declaration of Sara Kariko, ¶ 4.)  Dr. Hammond is one of her predecessors.  (Id.)  This role

11  includes responsibility for implementing DOC health policies and ensuring compliance.  (Id.)  In

12  addition, in 2017, Dr. Kariko was the Deputy Chief Medical Officer and reviewed Plaintiff's

13  2017 grievance in which he sought immediate cataract surgery.  (Kariko Decl. ¶ 6.)  She

14  determined the grievance was properly denied.  (Id. at 5–7.)  Whether Plaintiff was denied

15  cataract surgery because of DOC policy—and whether these three Defendants were personally

16  involved in such denials, failed to intervene despite being on notice of a constitutional violation,

17  or held responsibility for the policy that compelled the denial—involve issues of fact that must

18  be determined at trial.

19  **II.     Qualified Immunity**

20  "Qualified immunity attaches when an official's conduct does not violate clearly

21  established statutory or constitutional rights of which a reasonable person would have known."

22  City of Escondido, Cal. V. Emmons, 139 S. Ct. 500, 503 (2019).  Defendants argue that the right

23  Plaintiff claims they violated was not clearly established at the time (objections A, B, and E).

24

1    Specifically, they contend that a reasonable person would not have known that denying Plaintiff
2    cataract surgery under DOC policy would violate his Eighth Amendment rights because this
3    Court found no such violation in a previous unrelated case. (Dkt. No. 72 at 2–5 (citing Johnson
4    v. Morgan, Case No. C16-5738-BHS-TLF, 2018 WL 4084783 (W.D. Wash. 2018).)
5    Defendants' contention fails for several reasons.
6         First, Johnson is not precedent. Colwell is. Whether a right has been clearly established
7    depends on precedent. It was clearly established—in 2014—that monocular blindness was a
8    serious medical condition and that denying cataract surgery could amount to deliberate
9    indifference if surgery were medically necessary and the denial was based on policy. Colwell v.
10   Bannister, 736 F.3d 1060 (9th Cir. 2014). Plaintiff was diagnosed with cataracts in both eyes by
11   August 2014. (Copeland Decl. ¶ 16.)
12        Second, the report and recommendation in Johnson was adopted on August 27, 2018—
13   after the violations at issue here. See Dkt. No. 105, Johnson v. Morgan, Case No. C16-5738-
14   BHS-TLF. Plaintiff alleges a constitutional violation for denying him cataract-removal surgery
15   from August 2014 until August 2016, when he had surgery on his right eye, and until January
16   2019, when he was approved for surgery on his left eye after a change in DOC policy. (See Dkt.
17   No. 35, Declaration of William P. Aurich, ¶ 7 & at 6 (Attach. C) (approving cataract surgery for
18   left eye on January 30, 2019; Kariko Decl. ¶ 7 (change in policy on January 1, 2019).)
19   Defendants denied Plaintiff's request to approve surgery for his left eye on May 2, 2017 after
20   review by Defendants Bovenkamp and Dr. Kariko. (Bovenkamp Decl. at 13–15 (Attach. A).)
21   Plaintiff was informed on December 8, 2017 that the DOC Care Review Committee had also
22   denied his request for surgery. (Froehling Decl., Ex. 28.) The dates speak for themselves;
23   Colwell provided the clearly established right at the time, not Johnson.
24

1          Finally, as the Magistrate Judge points out, Defendants overinterpret Johnson as holding
2   that the pre-2019 DOC policy was "constitutional." Johnson was not a facial challenge to DOC
3   policy. The Court dismissed the plaintiff's claims because his cataract did not rise to the level of
4   monocular blindness, distinguishing it from Colwell. Johnson, 2018 WL 4084783 at *6 ("Mr.
5   Johnson's Eight Amendment claim should be dismissed on summary judgment as a matter of
6   law, because the cataract in his left eye is not severe enough to qualify as a serious medical
7   need."). Defendants fixate on the Court's statement in Johnson that the DOC policy "does not
8   mandate 'one good eye.' " See id. at *7. This misses the point of Colwell, which is that denial
9   of cataract surgery, if necessary to remedy monocular blindness, can amount to deliberate
10  indifference if the denial is based on the application of DOC policy, rather than a medical reason.
11         In addition, Plaintiff has introduced evidence showing that the DOC policy in effect did
12  mandate one good eye, in support of his claim that he was denied surgery because of policy. The
13  policy permits cataract-removal surgery for the "worst one eye if both eyes have best corrected
14  [visual acuity of less than] 20/60–3." (Froehling Decl., Ex. 4.) Surgery is also permitted for
15  either or both eyes if necessary to screen, manage, or monitor another disease. (Id.) DOC
16  applied this policy such that if one eye were good enough—corrected visual acuity better than
17  20/60–3—then the other eye was left alone. (Id., Ex. 1 at 90:13–21 (deposition of DOC
18  physician's assistant Jackie Peterson).) In other words, both eyes must deteriorate below 20/60–
19  3, at which point only one eye is eligible for surgery. So long as the repaired eye is better than
20  20/60–3, including correction, the other eye is not eligible for surgery—no matter how bad it
21  gets—unless surgery is necessary to monitor or manage another disease. For these reasons, the
22  Magistrate Judge correctly concluded that questions of fact preclude summary judgment on
23  qualified immunity.
24

Defendants' remaining objection relates to evidence Plaintiff introduced that Defendants denied his request for surgery despite his treating physician's recommendation. (Dkt. No. 72 at 7–8.) Once again, Defendants' argument is premised on a misinterpretation. The Report and Recommendation does not state that Defendants are required to follow the recommendation of an outside treating physician. It says:

> It is clearly established law that disregarding a treating expert's recommendation for treating a serious medical condition based solely on administrative policy may constitute deliberate indifference.

(Dkt. No. 71 at 16; see also id. at 10.)   Defendants have shown no error in that statement. See Colwell v. Bannister, 736 F.3d 1060, 1063 (9th Cir. 2014) ("the blanket, categorical denial of medically indicated surgery solely on the basis of an administrative policy that 'one eye is good enough for prison inmates' is the paradigm of deliberate indifference"); see also id. at 1069 (quoting Hamilton v. Endell, 981 F.2d 1062, 1067 (9th Cir. 1992) ("By choosing to rely upon a medical opinion which a reasonable person would likely determine to be inferior, the prison officials took actions which may have amounted to the denial of medical treatment, and the 'unnecessary and wanton infliction of pain.' ")

***

For the foregoing reasons, the Court ADOPTS the Report and Recommendation in full. Plaintiff's claims against Dr. Copeland and Dr. Fetroe are DISMISSED without prejudice. The rest of Defendants' motion is DENIED. The clerk is ordered to provide copies of this order to all counsel.

Dated January 4, 2022.

*[signature]*

Marsha J. Pechman
United States Senior District Judge