UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DAVID HOMES,<br><br>                Plaintiff,<br><br>    v.<br><br>WASHINGTON DEPARTMENT OF CORRECTIONS et al ,<br><br>                Defendant. | CASE NO. 3:18-cv-5735<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY |

This matter comes before the Court on Plaintiff's Motion to Exclude Expert Testimony (Dkt. No. 83). Having reviewed the Motion, Defendants' Response (Dkt. No. 86), the Reply (Dkt No. 88), and all supporting materials, the Court GRANTS Plaintiff's Motion.

**BACKGROUND**

Plaintiff, David Holmes, is an incarcerated individual at Clallam Bay Corrections Center. He was diagnosed with Pigmentary Dispersion Syndrome, an eye disease that can lead to glaucoma, among other things, if unmonitored. (Amended Complaint ¶¶ 10-11 (Dkt. No. 59).) In 2014, Dr. Copeland, an optometrist working as an independent contractor for the DOC,

ORDER GRANTING PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY - 1

examined Homes and noticed that his visual acuity had decreased to 20/200 in his right eye and 20/60 in his left eye. (Id. ¶ 13.) Dr. Copeland also diagnosed Holmes with cataracts in both eyes. (Id.) Although cataract surgery is the recommended course of treatment for Holmes' condition, Holmes did not receive cataract surgery in his right eye until 2016 and 2019 for his left eye. (Id. ¶¶ 21-29, 40-51.)

Holmes brings two Eighth Amendment claims under 42 U.S.C. § 1983 alleging that the Department of Corrections ("DOC") and several of its officials (collectively "Defendants"): (1) were deliberately indifferent to his medical eye needs, and (2) promulgated an unconstitutional health plan policy that effectively left him with monocular blindness. (Motion at 3-4.)

## ANALYSIS

**A.    Legal Standard**

Federal Rule of Civil Procedure 26 requires parties to disclose the identities of each expert and, for retained experts, requires that the disclosure includes the experts' written reports. Fed. R. Civ. P. 26(a)(2). These written reports must include:

  (1) A complete statement of all opinions the witness will express and the basis and reasons for them;

  (2) The facts or data considered by the witness in forming them;

  (3) Any exhibits that will be used to summarize or support them;

  (4) The witness's qualifications, including a list of all publications authored in the previous 10 years;

  (5) A list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

  (6) A statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B).

The expert report required by Rule 26 must be "detailed and complete" and must "stat[e] the testimony the witness is expected to present during direct examination together with the reasons therefore." Fed. R. Civ. P. 26 advisory committee's notes to 1993 amendment. Other lower courts in the Ninth Circuit have held that "[t]he reason for requiring expert reports is the elimination of unfair surprise to the opposing party and the conservation of resources." Elgas v. Colorado Belle Corp., 179 F.R.D. 296, 299 (D. Nev. 1998) (internal quotation and citation omitted). "The test of a report is whether it was sufficiently complete, detailed and in compliance with the Rules so that surprise is eliminated, unnecessary depositions are avoided, and costs are reduced." Id.

**B.    Discussion**

    **1.    Dr. Zollman**

Defendants retained Dr. Zollman to provide expert testimony for the Defense regarding the medical care Holmes received from the DOC. (Resp. at 5.)  Holmes moves to exclude Dr. Zollman's testimony on the grounds that he provided an incompliant written disclosure. The Court agrees.

The primary issue with Zollman's report is that it does not appear to contain a complete statement of opinions, along with the basis and reasons for them, the facts or data considered and whether Zollman will use any exhibits. Zollman's report is less than one and a half pages long and includes one paragraph entitled 'introduction', three paragraphs entitled 'history' and one paragraph entitled 'summary'. (See Declaration of Michelle Hansen, Exhibit C – Zollman Report (Dkt. No. 87-3).)  The paragraph entitled 'summary' appears the be the entirety of Zollman's opinion. He states that "while the timing of [Holmes'] treatment was delayed from what is typical in the civilian world, the records show that he was managed appropriately based on DOC

criteria." (Hansen Decl., Exhibit C.) Notably absent from this summary is what is typical "in the civilian world," what the DOC criteria is, and what Zollman relied upon in comparing the two. The only thing Zollman states that he reviewed was Holmes' medical records spanning from May 2010 to June 2019. (Id.) While Zollman states that the surgery Holmes received resulted in excellent vision and that he would not have received better care "in the civilian world," the surgery is not the issue at hand. Rather, the issue lies in whether DOC policy diverges from standard practice. Zollman's summary is silent on this issue. The Court finds this is not a proper report.

Defendants claim that they have until September 5, 2022, to provide a final report compliant with Rule 26. (Resp. at 7.) But Defendants are applying the wrong rule. Parties must make expert witness disclosures at the time and sequence that the Court orders. Fed. R. Civ. P. 26(a)(2)(D). Defendants cite to Rule 26(a)(6)(B) in support, which does not exist. It appears they intend to cite to a section of Rule 26(a)(2)(D), which states that "[a]bsent a stipulation or a court order, the disclosures must be made: (i) at least 90 days before the date set for trial. . ." But the Court made an order when it entered the Order Setting the Trial Date and Related Dates. (Dkt. No. 78.) According to that Order, reports from expert witnesses under Fed. R. Civ. P. 26(a)(2) were due on May 9, 2022. (Id.) As such, Defendants' reliance on the 90 day default deadline is inapposite.

Defendants do not argue the improper disclosure is substantially justified or harmless. "Rule 37 gives teeth to Rule 26's disclosure requirements by forbidding the use at trial of any information that is not properly disclosed." Goodman v. Staples the Office Superstore LLC, 644 F.3d 817, 827 (9th Cir. 2011) (citing Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001) and Fed. R. Civ. P. 37(c)(1)). "Rule 37(c)(1) is a self-executing,

1   automatic sanction designed to provide a strong inducement for disclosure." Id. (internal
2   quotation and citation omitted). The only exceptions to Rule 37(c)(1)'s exclusion sanction apply
3   if the failure to disclose is substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). "The
4   burden to prove harmlessness is on the party seeking to avoid Rule 37's exclusionary sanction."
5   Goodman, 644 F.3d at 827 (internal citation omitted). Because Defendants fail to even attempt to
6   argue this, the Court finds Dr. Zollman's report is not a proper report, and the improper
7   disclosure is neither substantially justified nor harmless.

8          Defendants also request the Court allow them to substitute a new medical expert in place
9   of Dr. Zollman. (Resp. at 7.)  The Court will not grant this request. Though there is no rule the
10  Court is required to follow regarding a request to substitute, other courts in the Ninth Circuit
11  have approached it in two ways. The first approach is to interpret the motion as a request to
12  amend the scheduling order under Rule 16(b)(4) of the Federal Rules of Civil Procedure.
13  See Fidelity Nat'l Finc., Inc. v. Nat'l Union Fire Ins. Co., 308 F.R.D. 649, 652 (S.D. Cal. 2015);
14  Park v. CAS Enterprises, Inc., No. 08-cv-00385-DMS-(NLS), 2009 WL 4057888, at *2-3 (S.D.
15  Cal. Nov. 18, 2009). The second approach is to consider the motion as an untimely designation
16  under Fed. R. Civ. P. 26(a) and decide the appropriateness of sanctioning the untimely disclosure
17  under Fed. R. Civ. P. 37(c). See Nikkar v. Gen. Star Indem. Co., No. CV 12-08148 DDP JCGX,
18  2014 WL 271630, at *2 (C.D. Cal. Jan. 23, 2014). Rule 16(b)(4) requires the moving party to
19  demonstrate good cause, whereas Rule 37(c) excuses a delay when it is substantially justified or
20  harmless.

21         Defendants do not argue either approach in their request to substitute Zollman.
22  Defendants state that they have been unsuccessful in reaching Dr. Zollman since 2021. (Resp. at
23  7.)  In Defendants' counsel's declaration, she states that she and her staff have been trying to
24

reach Zollman via "telephone, voice messages, workplace messages, direct correspondence, emails and other means since 2021 and have been unsuccessful in receiving a response from him." (Hansen Decl. at 2 (Dkt. No. 87).) It is not clear when in 2021 Zollman stopped responding to Defendants, but even assuming it was the end of 2021, at the time Defendants filed their Response, they had known for at least eight months that they could not reach him. Though Defendants spoke with Holmes' counsel about the issue, Defendants failed to bring it to the Court's attention until their Response to the Motion to Exclude. Given the length of time that has passed since Defendants have been unable to reach Dr. Zollman, and only a brief claim that Defendants have continued regular efforts to communicate with him, the Court finds Defendants have not demonstrated diligence in their efforts to find Dr. Zollman. Absent diligence, the Court cannot find good cause or that Defendants are substantially justified in their delay to substitute Dr. Zollman. The Court DENIES Defendants' request.

Because Dr. Zollman's written report fails to meet the standards set forth by Rule 26, the Court GRANTS Holmes' request to exclude Dr. Zollman's testimony without the opportunity to substitute experts.

**2.  Dr. Copeland**

Holmes also seeks to limit Dr. Copeland's testimony. Dr. Copeland is an optometrist employed by the DOC who treated Holmes. (Hansen Decl., Ex. D (Dkt. No. 87-4).) Holmes does not seek to exclude Dr. Copeland's testimony entirely, but rather limit it to his observations and opinions formed during the course of treatment. The Court GRANTS Holmes' request.

A treating physician is exempt from Rule 26(a)(2)(B)'s written report requirement to the extent that their opinions were formed during the course of treatment. Goodman v. Staples the Off. Superstore, LLC, 644 F.3d 817, 825 (9th Cir. 2011). This is because, "[g]enerally a treating

physician is not retained or specially employed to provide expert testimony," rather, they are "a percipient witness of the treatment rendered," and therefore not subject to the written report requirement of Rule 26, Id. at 824 (citing Fed. R. Civ. P. 26(a)(2)). The witness must still be disclosed, and the disclosure must include (i) the subject matter on which the witness is expected to present evidence under; and (ii) a summary of the facts and opinions to which the witness is expected to testify. Fed. R. Civ. P. 26(a)(2)(C). When a treating physician provides expert testimony beyond the scope of the treatment rendered, Rule 26(a)(2)(B)'s disclosure of written reports applies. Id. at 825.

Defendants' disclosure of Dr. Copeland states that they expect Dr. Copeland to testify as to his treatment and evaluations of Holmes. (Hansen Decl. Ex. D.) The disclosure also stated that "Dr. Copeland may also testify that the treatment provided to Mr. Holmes was medically appropriate and consistent with the Offender Health Plan." (Id.) Holmes' primary contention with Defendants' disclosure is with Dr. Copeland's testimony that Holmes' treatment was medically appropriate. Specifically, Holmes argues that whether Dr. Copeland's treatment of him was medically appropriate goes to the heart of the issue and is not something Dr. Copeland would learn based solely on the information he acquired through his observation and treatment of Holmes. The Court agrees. Such testimony is outside the scope of the "percipient witness" and would ordinarily require a written report.

As a treating physician, Dr. Copeland may testify as to the facts and opinions he developed during the course of Holmes' treatment, and whether or not that treatment was consistent with the Offender Health Plan. Dr. Copeland is excluded from testifying that the treatment was medically appropriate or that the Offender Health Plan complied with the Eighth Amendment.

### 3. Dr. Hammond

Holmes' similarly seeks to limit Dr. Hammond's testimony the facts and opinions formed during treatment. Notably, Defendants failed to disclose Dr. Hammond in their Expert Witness Disclosure. (See Hansen Decl. Ex. D.) Defendants make clear in their Response that they intend to use Dr. Hammond as an expert witness and argue that their failure to disclose was harmless. (Response at 10-11.)

The Court has limited information on which to decide this. Defendants' response does not make clear what they expect Dr. Hammond to testify to. It appears Dr. Hammond was the chief Medical Officer and part of the Care Review Committee that determined whether cataract surgery should be approved for Holmes during the period of Holmes' treatment. (Am. Compl. ¶¶ 18, 29-30; Hansen Decl. Ex. A, Deposition of Steve Hammond at 23:22-4 (Dkt. No. 87-1).) Holmes does not argue that he has been prejudiced by Defendants' failure to disclose Dr. Hammond. Indeed, Holmes had the opportunity to depose him. Instead, Holmes asks the Court to limit Dr. Hammond's testimony to the observations and opinions formed during the course of treatment. This type of testimony falls under the treating physician standard and is admissible. See Goodman, 644 F.3d at 825.

The Court GRANTS Holmes' request and limits Dr. Hammond's testimony to that of a treating physician. Dr. Hammond may testify as to the facts and opinions formed during the course of Holmes' treatment. Dr. Hammond is excluded from testifying that the treatment was medically appropriate or whether adherence to the Offender Health Plan caused Holmes to suffer an Eighth Amendment violation.

### 4. Dr. Niemeyer

Holmes' Motion to Exclude initially included an argument to limit Dr. Niemeyer's testimony. (Motion at 9-12.) In their Response, Defendants alerted the Court to Dr. Niemeyer's passing in June 2021. (Response at 4-5.) The Court is sorry to hear about his passing. Holmes' argument as to Dr. Niemeyer is now moot.

### CONCLUSION

Because Defendants failed to submit a proper report for Dr. Zollman, the Court excludes his testimony as an expert witness. The Court finds that Dr. Copeland and Dr. Hammond may testify as to the facts and opinions formed during the course of Holmes' treatment but are excluded from testifying as to the appropriateness of that treatment or whether adherence to the DOC policy caused Holmes to suffer an Eighth Amendment violation.

The clerk is ordered to provide copies of this order to all counsel.

Dated October 28, 2022.

Marsha J. Pechman
United States Senior District Judge